**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FIRST NATIONAL BANK**
**OF PASCO,**

     **Plaintiff,**

**v.**                                                            **Case No.: 8:25-cv-1934-TPB-AAS**

**U.S. ALLIANCE GROUP, INC.**
**et. al.,**

     **Defendants.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

Defendants U.S. Alliance Group, Inc. (USAG) and Payment Solutions International, LLC (PaySol) (together, "the defendants") move for entitlement to an award of attorney's fees and costs against Plaintiff First National Bank of Pasco (Bank of Pasco). (Doc. 51). Bank of Pasco opposes the motion. (Doc. 53). It is **RECOMMENDED** that the defendants' motion for entitlement to attorney's fees and costs (Doc. 51) be **GRANTED**.

## I.      Background and Procedural History

This action arises from an August 2022 Automatic Clearing House Origination Agreement (ACH Agreement) between the defendants and Bank of Pasco to facilitate the electronic processing of payments for cannabis sales at various dispensaries. Bank of Pasco sponsored payment card and ACH

processing through separate agreements, including the POS Network Sponsorship Agreement. (Doc. 51, p. 4). Bank of Pasco also provided deposit accounts to payment processors under written agreements (the Checking Account Agreement), which include setoff and security interest provisions. (Doc. 51, p. 4). The defendants opened accounts with Bank of Pasco subject to these agreements (the Payment Processing Agreements).

In mid-2024, the United States Office of the Comptroller of the Currency (OCC) investigated the Bank of Pasco "for highly 'suspect' and potentially 'illegal' ACH account transactions for [c]annabis [s]ales in [the defendants'] accounts with [Bank of Pasco]." (Doc. 53, p. 2). This investigation triggered the Bank of Pasco's Bank Secrecy Act / Anti-Money Laundering regulations protocol, an account freeze, and an audit. (*Id.*). The defendants then filed suit in mid-2025 against Bank of Pasco, and the lawsuit included claims to the accounts frozen by Bank of Pasco in response to the OCC investigation.[1] (Doc. 53, p. 3).

Subsequently, on July 23, 2025, Bank of Pasco filed the instant complaint for interpleader against the defendants and "all known claimants who also made claims to the same frozen account funds." (Docs. 1; 53, p. 3). Bank of Pasco filed its second amended complaint for interpleader on

---

[1] The related case is 8:25-cv-01458-SDM-CPT.

November 25, 2025. (Doc. 40). The defendants moved to dismiss on grounds that Bank of Pasco "failed to plead the existence of any adverse claimants, was not a disinterested stakeholder, and was improperly using interpleader to litigate contractual and regulatory disputes." (Docs. 43, 51). Then, Bank of Pasco voluntarily dismissed its interpleader action on January 12, 2026. (Doc. 47).

The defendants now move for entitlement to recover attorney's fees incurred in response to Bank of Pasco's alleged "misuse of interpleader as a litigation tactic rather than as a neutral procedural device." (Doc. 51, pp. 1–2). The defendants argue they are entitled to attorney's fees on two independent grounds. First, the defendants argue they are entitled to attorney's fees under the Payment Processing Agreements because Bank of Pasco brought this action as a dispute over its contract rights and did not prevail. (Doc. 51, p. 3). Second, the defendants argue they are entitled to attorney's fees under equitable principles governing interpleader because Bank of Pasco's alleged unreasonable conduct necessitated or prolonged the litigation. (*Id.*). Bank of Pasco counters there are no grounds to award the defendants any attorney's fees. (Doc. 53).

## II.    Applicable Law

"Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *In re Mandalay Shores Co-op. Hous. Ass'n, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). "[I]nterpleader generally is a suit in equity which invokes equitable principles." *Gold-Fogel v. Fogel*, 16 F.4th 790, 801 (11th Cir. 2021) (citation omitted).

Attorney's fees may be justified in an interpleader action. *Mandalay,* 21 F.3d at 383 (identifying three reasons "[a]ttorney's fees are justified in many interpleader actions"). Attorney's fees are "generally to be imposed against the party who . . . benefited from the interpleader action." *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986). "The usual practice is to tax the costs and fees against the interpleader fund, although the court may tax the losing claimant directly when her conduct justifies doing so." *Id.* at 1498. However, "when a stakeholder's interpleader claim arises out of the normal course of business" attorney's fees are not warranted. *Mandalay,* 21 F.3d at 383 (explaining when a bank resorts to interpleader in the normal course of business "there is no basis for awarding the bank fees" out of the disputed funds).

Generally, entitlement to attorney's fees is a substantive issue and therefore governed by state law. *Plum Creek Tech., LLC v. Next Cloud, LLC*, No. 8:19-CV-1974-T-60CPT, 2020 WL 3317897 at *1 (M.D. Fla. June 3, 2020), *report and recommendation adopted*, No. 8:19-CV-1974-T-60CPT, 2020 WL 3288033 (M.D. Fla. June 18, 2020). Under Florida law "each party is responsible for its own attorney's fees unless a contract or statute provides otherwise." *Id.* (quoting *Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004) (quotation marks and citation omitted)). The party requesting fees bears the burden of establishing entitlement to attorney's fees. *Id.*

## III.  Analysis

The defendants request an attorney's fees award on two independent grounds and bear the burden to establish entitlement to attorney's fees.

### a. The Payment Processing Agreements

The defendants argue they are entitled to attorney's fees under the terms of the Payment Processing Agreements. (Doc. 51, pp. 13–17). Bank of Pasco argues neither the Federal Rules of Civil Procedure nor the federal interpleader statute provides a basis for entitlement to attorney's fees. (Doc. 53, p. 6). Bank of Pasco also argues attorney's fees are not warranted where the interpleader claim arises out of the normal course of business. (Doc. 53, pp. 6–8).

First, attorney's fees may be awarded in an interpleader action. *Mandalay,* 21 F.3d at 383 (identifying three reasons "[a]ttorney's fees are justified in many interpleader actions"). Second, the cases Bank of Pasco cites for its position that attorney's fees are not warranted because the interpleader claim arose out of the normal course of business are distinguishable. In each case Bank of Pasco cites, the plaintiff interpleader bank or insurance company sought attorney's fees. *See Mandalay*, 21 F.3d at 384 (remanding because a bank may be an innocent stakeholder entitled to attorney's fees if the interpleader did not arise out of the ordinary course of business); *Prudential*, 781 F.2d at 1498 (remanding "to award [interpleader] plaintiffs their costs and attorneys' fees from the proceeds of the interpleader fund."); *In re Jones*, 61 B.R. 48, 53−54 (Bankr. N.D. Tex. 1986) (stating "banks and insurance companies are to be distinguished from other stakeholders" and denying the plaintiff interpleader bank attorney's fees). In contrast, here, the defendants seek attorney's fees on contractual grounds (and independent equitable grounds). The case law does not support the argument that interpleader defendants are not entitled to attorney's fees when the action arises from the ordinary course of the plaintiff bank's business.

### i.    The POS Networking Agreement

Having rejected Bank of Pasco's argument that interpleader allegedly arising out of the ordinary course of Bank of Pasco's business bars the defendants' entitlement to fees, this report now turns to the defendants' argument that the Checking Account Agreement and POS Network Sponsorship Agreement contain attorney's fees clauses entitling them to an award. Bank of Pasco counters that the defendants' arguments are unconvincing "regardless of whether the POS Networking Sponsorship Agreement contained a non-applicable attorney's fees provision for indemnity related claims." (Doc. 53, p. 8).

> The POS Networking Agreement states:
>
> Should suit be brought to enforce or interpret any part of this Agreement, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs, including expert witness fees and fees on any appeal.

(Doc. 40-2, p. 15) A plain reading of this provision, and the surrounding provisions, does not limit attorney's fees to indemnity-related claims, and Bank of Pasco provides no further support for its limited interpretation. Therefore, the issue is whether the complaint for interpleader seeks to "enforce or interpret any part of [the POS Agreement]" and whether the defendants are prevailing parties.

The substance of the claims, not the party's label, governs whether the

7

provision applies and entitles the defendants to attorney's fees. *See Rabco Corp. v. Steele Plaza, LLC*, No. 616CV1858ORL40KRS, 2018 WL 7982921 at *4 (M.D. Fla. Aug. 9, 2018) (rejecting a party's argument that fee shifting only applied to "collection" claims when the party attempted to label the claim as a mere "breach of contract" claim because the substance of the claim sought collection).

Bank of Pasco's second amended complaint for interpleader alleges "[t]he defendants now owe[] the Bank substantial monies, which continue to accrue" because of non-compliance with the Payment Processing Agreements. (*See* Doc. 40, pp. 7–10, 15). For example, paragraph G of the Prayer for Relief requests "the award of reasonable costs, including charges, expenses, and fees, related to the Interpleader *and terms of the ACH Agreements*. (*Id.*, p. 15) (emphasis added). Thus, Bank of Pasco brought suit to "enforce or interpret" part of the Agreement.

Last, the defendants are the prevailing parties because the plaintiff voluntarily dismissed the action. *Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 919 (Fla. 1990) ("In general, when a plaintiff voluntarily dismisses an action, the defendant is the prevailing party."); *Rinehuls v. Holiday Inn Club Vacations, Inc.*, No. 6:21-CV-0123-ACC-DCI, 2021 WL 3811951 at *2 (M.D. Fla. Aug. 9, 2021), *report and recommendation adopted sub nom. Rinehuls v.*

*Experian Info. Sols., Inc.*, No. 6:21-CV-123-ACC-DCI, 2021 WL 3788997 (M.D. Fla. Aug. 26, 2021) (applying the Florida prevailing party law when interpreting the fee-shifting provision in a contract governed by Florida law).[2] Therefore, it is recommended the defendants should be entitled to attorney's fees under the POS Networking Agreement.

### ii.   The Checking Account Agreement

Likewise, the defendants should be entitled to attorney's fees under the language of the Checking Account Agreement. The Checking Account Agreement states:

> You agree to be liable to us for any loss, costs or expenses, including reasonable attorneys' fees to the extent permitted by law, that we incur as a result of any dispute involving your account, and you authorize us to deduct any such loss, costs or expense from your account without prior notice to you. This obligation includes disputes between yourself and us involving the account and situations where we become involved in disputes between you and an authorized signer, another joint owner, or a third party claiming an interest in the account.

(Doc. 36-1, p. 5). This language appears to unilaterally entitle Bank of Pasco to attorney's fees in the event there is a dispute involving the defendants' account.

---

[2] Florida law governs the agreement. The POS Networking Agreement states, "The Parties acknowledge that Bank, as a national bank, is regulated by the Office of the Comptroller of the Currency, and is therefore subject to federal law, and entitled to preemption from state laws to the fullest extent permitted by law. In any matters not so preempted (if any) this Agreement shall be governed by the internal laws, and not by the laws regarding conflicts of laws, of the State of Florida." (Doc. 40-2).

However, Section 57.105(7), Florida Statutes,[3] transforms a one-sided attorney fee provision into a reciprocal provision. *Levy v. Levy*, 326 So. 3d 678, 681 (Fla. 2021); Fla. Stat. § 57.105(7) ("If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.").

As previously discussed, the complaint for interpleader creates a dispute involving the defendants' accounts because the complaint seeks fees Bank of Pasco alleges the defendants owed to Bank of Pasco for violations of the Payment Processing Agreements. (*See* Doc. 40, pp. 7−10, 15). Therefore, this report recommends the defendants should be entitled to attorney's fees.

### b. Equitable Interpleader Principles

The defendants also argue they are entitled to attorney's fees under equitable interpleader principles because the Bank of Pasco unreasonably invoked the interpleader action, pursued interpleader for an improper purpose, and unnecessarily prolonged the interpleader litigation. (Doc. 51, p. 18). Bank of Pasco contends the interpleader action arose out of the ordinary course of

---

[3] Florida law governs the Agreement. The Checking Account Agreement states, "You understand that this Agreement is governed by the laws of Florida, except to the extent federal law is controlling." (Doc. 40-1).

business, and its sole interest was to resolve dispute claims to the funds. (Doc. 53, p. 8).

Generally, interpleader is "a suit in equity which invokes equitable principles." *Fogel*, 16 F.4th at 801. "[N]either Fed. R. Civ. P. 22, nor the federal interpleader statute 28 U.S.C. § 1335, specifically provide for attorneys' fees or costs. . . . The determination of whether to award attorneys' fees and costs lies within the sole discretion of the court." *Campbell v. N. Am. Co. for Life & Health Ins.*, No. 3:04CV1118 JTEM, 2007 WL 2209249 at * 5 (M.D. Fla. July 30, 2007).

Courts may assert their inherent power to assess attorneys' fees "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258−59 (1975) (internal quotations omitted); *see Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1498 (11th Cir. 1986) ("the court may tax the losing claimant directly when her conduct justifies doing so."); 3 Bus. & Com. Litig. Fed. Cts. § 24:47 (5th ed.) ("[F]ees may be assessed against the interpleader plaintiff for inappropriately filing an action in which there are no adverse claims or where the plaintiff files for an impermissible purpose.").

Upon review, Bank of Pasco's conduct does not justify fee shifting on equitable grounds. "One purpose of interpleader is to protect a stakeholder

11

from the possibility of defending multiple claims." *Davis v. Jackson Nat'l Life Ins. Co.*, No. 2:14-CV-96-FTM-38DNF, 2014 WL 12610539 at *2 (M.D. Fla. Sept. 26, 2014) (citation omitted); *See Ohio Nat. Life Assur. Corp. v. Langkau*, No. 3:06-CV-290-J-33MCR, 2006 WL 3162354 at *2 (M.D. Fla. Nov. 2, 2006), *aff'd sub nom. Ohio Nat. Life Assur. Corp. v. Langkau ex rel. Estate of Langkau*, 353 Fed. App'x. 244 (11th Cir. 2009) ("These claims need not be formal or fully developed; it is sufficient that the stakeholder may be subjected to them.").

Bank of Pasco alleged there may be adverse claims between USAG and PaySol for the same funds. (Doc. 40, ¶ 28). Even if Bank of Pasco's interpleader was misguided, there is insufficient evidence to conclude Bank of Pasco acted in bad faith. (*See* Doc. 53, p. 8) (asserting Bank of Pasco's "sole interest was to avail itself of interpleader to resolve disputed claims to the subject proceeds"). *See Langkau*, 2006 WL 3162354 at *2 ("All that is required is that the stakeholder legitimately fears multiple litigation directed against a single fund."). Therefore, it is recommended the motion should not be granted on equitable grounds.

## IV.    Conclusion

The undersigned recommends the defendants should be entitled to fees under the contractual provisions of the Payment Processing Agreements. The undersigned further recommends that defendants should not be entitled to fees under equitable grounds. Accordingly, it is **RECOMMENDED** that the USAG and PaySol's motion for entitlement to attorney's fees and costs (Doc. 51) be **GRANTED**.[4]

**ENTERED** in Tampa, Florida on March 3, 2026.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and

---

[4] "Within forty-five days after the order determining entitlement, the party claiming fees and expenses must file a supplemental motion" on the amount of fees the moving party requests. Local Rule 7.01(c), M.D. Fla. This report is not an order. Consequently, the entry of this report does not start the forty-five-day timeframe for filing a supplemental motion. Rather, if the District Judge adopts this report's recommendation, that order will commence the forty-five days within which the defendants must file their supplemental motion.

recommendations or to request an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely under 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.